Filed 7/15/26

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| VAHAN MURADYAN,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>ROB BONTA, as Attorney General, etc.,<br><br>　　　Defendant and Respondent. | B346081<br><br>(Los Angeles County<br>Super. Ct. No. 24STCP02925) |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Wallin & Klarich and Jonathan M. Lynn, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Lara Haddad and Christopher J. Kissel, Deputy Attorneys General, for Defendant and Respondent.

————————————

Penal Code[1] section 290 sets forth a three-tier registration system for persons convicted of various sexual offenses. Tier three is reserved for sexual offenders our Legislature has determined to pose the greatest risk of reoffending. As such, tier three offenders are subject to lifetime registration, while tier one and two offenders may petition for termination of registration after 10 or 20 years, respectively.

Vahan Muradyan was convicted of a sexual offense against a minor under section 288.4, subdivision (b), an offense that made him a tier three offender subject to lifetime registration on the sex offender registry. He petitioned for a writ of mandate in the trial court to have his name removed from the registry on the ground that the three-tier system violated his constitutional guarantees to equal protection. Muradyan specifically argued that there was no rational basis to impose lifetime registration for his offense when other, more serious offenses are not subject to lifetime registration. The trial court denied his petition, finding that the Legislature had a rational basis for treating a sex offense under section 288.4—which requires finding that the defendant lured a minor and was motivated by an unnatural interest in children—as a tier three offense subject to lifetime sex offender registration. We affirm the order.

## BACKGROUND

In 2009, Muradyan was convicted of violating section 288.4, subdivision (b), which prohibits arranging and attending a meeting with a minor with the intent to commit a sexual offense. The sentencing court suspended imposition of sentence, placed

---

[1] All further undesignated statutory references are to the Penal Code.

Muradyan on felony probation for five years, and ordered him to serve 120 days in jail. The court also required Muradyan to register as a sex offender.

In 2024, Muradyan petitioned for a writ of mandate seeking removal of his name from the sex offender registry on the ground that categorization of his crime as a tier three offense violated his equal protection rights under our state and federal constitutions. He argued that there was no rational basis to subject him to lifetime registration when more serious crimes, such as committing a lewd or lascivious act against a child under 14 years of age, section 288, subdivision (a), do not require lifetime registration.

The trial court denied the petition. The trial court noted that Muradyan was convicted under section 288.4, subdivision (b), which is a luring crime involving predatory behavior and preparation. The trial court found that the Legislature could have rationally concluded that persons who commit luring crimes are more likely to recidivate and should therefore be subject to lifetime registration. Muradyan identified five offenses that he argued were "far greater," yet did not require lifetime registration. The trial court distinguished each of Muradyan's examples, finding that "the Legislature could have reasonably determined that offenders convicted of [those offenses] do not present the same risk of harming children in the future because they lack a necessary element reflecting a predatory mindset toward minors." The trial court concluded that "the Legislature's different treatment of offenders convicted under section 288.4 of 'child luring,' a predatory crime against children, reflects a rational decision motivated by a legitimate purpose of monitoring offenders with the highest risk of recidivism against minors" and

3

did not violate constitutional equal protection principles under rational basis review.

## DISCUSSION

I. Equal protection principles

Our federal and state constitutions prohibit states from denying any person the equal protection of the laws. (U.S. Const., 14th Amend.; Cal. Const., art. 1, § 7.) The federal and state equal protection guarantees, although independent, are substantially equivalent. (*People v. I.B.* (2024) 104 Cal.App.5th 702, 709.) Equal protection requires similarly situated persons be treated alike. (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) " 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*Ibid.*) However, equal protection does not mean "that different things must be treated as though they are the same." (*In re C.B.* (2018) 6 Cal.5th 118, 134; *People v. Guzman* (2005) 35 Cal.4th 577, 591 [equal protection does not require uniform application of law to persons who are different].)

Recently, our California Supreme Court in *Hardin* clarified how the courts should approach an equal protection challenge to laws drawing distinctions between individuals based on classifications created by the law itself. (*Hardin, supra,* 15 Cal.5th at p. 851.) Prior to *Hardin*, courts engaged in a two-step inquiry, first considering the threshold question " 'whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner[, and then] [i]f [the court] deem[s] the groups at issue similarly situated in all material respects [it] consider[s] whether the challenged classification' is adequately justified." (*Id.* at p. 848.)

4

Recognizing that the former inquiry was often subsumed within the latter—or was presumed without analysis so that the court could proceed to the second step—the *Hardin* court dispensed with this two-step approach. Instead, it clarified, "The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Id.* at pp. 850–851.)

Here, the parties agree that the applicable standard of review is rational basis because the registration system does not implicate a suspect class or fundamental right. (See generally *Legg v. Department of Justice* (2022) 81 Cal.App.5th 504, 511 (*Legg*); *People v. McKee* (2010) 47 Cal.4th 1172, 1211, fn. 14 [mandatory lifetime sex offender registration does not implicate a fundamental right].) Thus, the court must determine if the Legislature lacked a rational basis for the difference in treatment challenged here—*i.e.* subjecting those convicted of an offense under 288.4, subdivision (b), to tier three registration requirements—such that this difference violates Muradyan's right to equal protection of the law.

Equal protection "is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] In other words, the legislation survives constitutional scrutiny as long as there is ' "any reasonably conceivable state of facts that could provide a rational basis for the classification." ' [Citation.] This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational

5

speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74–75; accord *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*).) "This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)

The party challenging the law has the burden of showing that " 'no rational basis for the unequal treatment is reasonably conceivable.' " (*Hardin, supra,* 15 Cal.5th at p. 852.) This requires the challenger to " ' "negative every conceivable basis" ' that might support the disputed statutory disparity." (*Johnson, supra,* 60 Cal.4th at p. 881, quoting *Heller v. Doe* (1993) 509 U.S. 312, 320.) " 'If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' " (*Hardin,* at p. 852.)

We review an equal protection claim de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.)

II.     The sexual offender registry system

The Sex Offender Registration Act, codified in section 290, "serves 'an important and vital public purpose by compelling registration of many serious and violent sex offenders who require continued public surveillance,' " and seeks in particular to protect children who " 'are a class of victims who require

paramount protection' from sex offenders." (*Johnson, supra*, 60 Cal.4th at p. 877.) As originally enacted, the act required lifetime registration for all eligible offenses or circumstances. (*People v. Hamilton* (2025) 108 Cal.App.5th 423, 431–432.) "[I]t is settled that section 290's lifetime registration requirement legitimately intends to 'promote the " 'state interest in controlling crime and preventing recidivism in sex offenders.' " ' [Citation.] Moreover, there is no doubt that mandatory registration for sex offenders who prey on underage victims is rationally related to that important and vital public purpose." (*Johnson*, at pp. 881–882.)

The Legislature modified its all-inclusive approach to the sex offender registry by eliminating lifetime registration for all offenders and instituting a three-tiered system requiring lifetime registration only for offenders meeting certain criteria. Tier one and two offenders can petition for removal after they complete their statutorily-required period on the registry, providing that a court does not find that community safety would be significantly enhanced by requiring their continued registration. (§ 290.5, subd. (a)(3).) Tier three offenders, like Muradyan, must remain on the registry for life. This modification was intended to distinguish between offenders where the law previously " 'treat[ed] all sex offenders the same, regardless of the person's risk of reoffense.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 384 (2017–2018 Reg. Sess.) as amended Sept. 8, 2017, p. 10 [quoting authors' comments] (Rules Analysis).) This new distinction, which ultimately lessened the number of individuals on the registry, was intended in part to serve overburdened law enforcement agencies, which struggled to supervise registrants posing the greatest risk to public safety due to the high number of registrants. (*People v. Hamilton*, *supra*,

7

108 Cal.App.5th at p. 432; *People v. Franco* (2024) 99 Cal.App.5th 184, 190–191.)

The Legislature accordingly amended section 290 to adopt a three-tiered scheme that based registration on the offender's risk level.  Effective January 2021, the act created the three distinct registration tiers, based upon the Legislature's assessment of the likelihood of recidivism.  (See generally *People v. Franco*, *supra*, 99 Cal.App.5th at pp. 191–192.)  In general, tier one offenses are misdemeanors or nonserious or nonviolent felonies (§ 290, subds.  (c) & (d)(1)(A)), and tier two offenses are serious or violent felonies and additional specified offenses (§ 290, subd. (d)(2)(A)).  Tier three registration applies to individuals who meet certain criteria, such as those who have previously been convicted of certain offenses after prior convictions of registrable offenses, who have previously been committed to a state mental hospital as a sexually violent predator, have an above-average risk level score on the static risk assessment instrument for sex offenders, have been deemed habitual sex offenders, or have been convicted in two separate proceedings of committing lewd and lascivious acts on a child under age 14. (§ 290, subd. (d)(3).)  Tier three also applies to individuals who have committed specified offenses, including, as relevant here, section 288.4.  (§ 290, subd. (d)(3)(C)(xii).)

III.   A rational basis exists for subjecting section 288.4, subdivision (b), offenders to lifetime sex offender registration

Muradyan argues that his lifetime registration resulting from his conviction under section 288.4, subdivision (b), lacks a rational basis and thus violates his equal protection rights, because "more serious" offenses do not require lifetime

8

registration.  In his original petition, Muradyan identified five offenses that he claimed are more serious than his section 288.4, subdivision (b), offense and that therefore demonstrate this lack of rationality.  On appeal, he has focused solely on section 288, subdivision (a), to argue that the Legislature unconstitutionally differentiated between categories of offenders.  This more limited argument still fails.

A conviction under section 288.4, subdivision (b), requires satisfaction of each of the following elements:  1) defendant arranged a meeting with a minor or a person they believed to be a minor; 2) when they did so, they were motivated by an unnatural interest in children; 3) at the meeting, they intended to expose their genitals or pubic or rectal area; and 4) defendant went to the meeting at the arranged time.  (§ 288.4, subd. (b); see generally *People v. Cornett* (2012) 53 Cal.4th 1261, 1267 [Legislature created § 288.4 offense and other offenses by urgency measure "to prevent 'future victimization' of the community by sex offenders"]; *People v. Fromuth* (2016) 2 Cal.App.5th 91, 101–102, fn. 8 (*Fromuth*).)

The Legislature described section 288.4 as a " 'child luring' " crime.  (*Fromuth*, *supra*, 2 Cal.App.5th at p. 102, fn. 9.) Child luring crimes are characterized by an adult planning or cultivating a relationship with a targeted minor.  "Luring may be committed by a 'contact or communication' that is preparatory or indirect," such as by using an agent.  (*People v. Medelez* (2016) 2 Cal.App.5th 659, 663.)  Both the courts and the Legislature have already recognized luring crimes—and specifically offenses under section 288.4—as predatory and premeditated, and that a "person who arranges to have sex with a child when given the

opportunity is an opportunistic sexual predator." (*Fromuth*, at p. 111.)

In comparison, section 288, subdivision (a), criminalizes the willful commission of "any lewd or lascivious act" on a child under the age of 14 years, "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." Muradyan attempts to characterize section 288, subdivision (a), as the more serious offense because it requires actual contact with a minor, while offenses under section 288.4 often "involve no more than the offender having a long distance or online chat with a minor who is in reality an undercover agent and not a minor . . . and there is rarely any physical contact in such offenses." He also argues that a violation of section 288, subdivision (a), may be accomplished by a perpetrator who plans extensively to commit the crime, and thus in a particular case may be equally predatory as an offense committed under section 288.4. Muradyan contends that in the absence of a "statistical, academically supported body of proof" the Legislature's determination that a luring offense under section 288.4 is more likely to involve a potential repeat offender than an offense under section 288, subdivision (a), it cannot survive rational scrutiny.

Muradyan misapprehends the standard for determining that a statute violates equal protection under the rational basis standard. It is not for the law's proponent to demonstrate that the Legislature has empirical proof supporting the efficacy of each provision. To the contrary, the Legislature need not have any empirical basis at all; a court may uphold the legislative acts based upon no more than its own rational speculation as to the Legislature's motives. Rather, it is Muradyan's burden to "negative every conceivable basis" for the Legislature's

differential treatment of offenses under section 288.4. (*Johnson*, *supra*, 60 Cal.4th at p. 881.) He cannot meet this standard.

It is already "settled that [the] . . . lifetime registration requirement legitimately intends to 'promote the " 'state interest in controlling crime and preventing recidivism in sex offenders.' " ' " (*Johnson*, *supra*, 60 Cal.4th at p. 882.) It is also well established that child luring crimes are recognized as distinct from other types of sex offenses and are viewed as inherently predatory in nature. (See, e.g., *People v. Medelez*, *supra*, 2 Cal.App.5th at p. 663 [luring requires preparatory communication].) Muradyan has presented no argument as to how a statute requiring lifetime registration of individuals the law recognizes as "opportunistic sexual predators" fails to have a rational relationship to the legitimate government interest in preventing sexual abuse of minors. In subjecting persons convicted of a crime under section 288.4 to lifetime registration, the Legislature could have rationally and reasonably believed that a person who arranges a rendezvous with a minor with the intent of exposing their genitals, and follows through on that meeting possesses a mindset or proclivity towards the sexual abuse of a minor that differs from offenders of section 288, subdivision (a), which does not necessarily require predatory and planning behavior. In short, the Legislature could rationally find that a person who commits a preparatory, predatory crime against a minor is more likely to recidivate than a sex offender who violates section 288, subdivision (a).

Moreover, section 288, subdivision (a), does not require the perpetrator to be motivated by an "*unnatural* or *abnormal* sexual interest in children," as section 288.4 requires. (Italics added.) Instead, section 288, subdivision (a), can be violated by a young

11

adult and a minor involved in a " 'teen romance[ ],' " which the Legislature rationally could have found less concerning and less indicative of a likelihood to reoffend. (*Legg, supra*, 81 Cal.App.5th at pp. 512, 516 [plausible basis exists to require lifetime registration for violating § 288, subd. (c)(1), but only 20-year registration for violating § 288, subd. (a)].)[2]

Muradyan posits that even section 288.4 can be violated by an 18-year-old arranging to meet his 17-year-old girlfriend for a movie with the intent to have sex with her after, if a jury believes his conduct was motivated by an unnatural sexual interest. We are unpersuaded. " 'When conducting rational basis review . . . [a] plausible reason for distinguishing between [two groups of individuals] need not exist in *every* scenario in which the statutes might apply.' " (*Hardin, supra*, 15 Cal.5th at p. 863, quoting *People v. Turnage, supra*, 55 Cal.4th at pp. 77–78.) Even if Muradyan can identify specific circumstances under which an offense under section 288, subdivision (a), may be more insidiously perpetrated than an offense under section 288.4, that does not negate the rational purpose underlying the statute in its entirety.

---

[2] The *Legg* court ultimately rejected the equal protection challenge by concluding that individuals who violated section 288, subdivision (c)(1), are not similarly situated to those who violated section 288, subdivision (a). (*Legg, supra*, 81 Cal.App.5th at pp. 514–515.) A more recent challenge to the same provision, in the wake of *Hardin*'s directive to focus on whether the difference in treatment is justified, affirmed the *Legg* court's conclusion. (*People v. Molina* (2026) 120 Cal.App.5th 846, 856 ["[W]e conclude—as the *Legg* court did—that a rational basis exists for the different registration requirements of section 288(c)(1) offenders compared to section 288(a) offenders"].)

Finally, Muradyan cites a lone article[3] to show that the registration system, and the understanding of recidivism that underlies it, is based on outdated data. While the article questions the efficacy of sex offender registries and the data used to create them, it does not address the equal protection issue before us: whether our Legislature had a rational basis to distinguish between different sex offenses in the manner that it has done here for purposes of the sex offender registry. Not only does it not answer the pertinent question here, but it is also rebutted by the legislative record in this case. In creating the three-tier registry, our Legislature specifically stated that it relied on " 'decades of research' " to obtain " 'a much better sense of who is at high risk of reoffending and who is not' " and to determine the " 'best practices' " to protect the public from sex offenders. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 384 (2017–2018 Reg. Sess.) as amended Sept. 8, 2017, p. 10.) "To strike down an act of the Legislature as irrational based on a set of untested empirical findings would be antithetical to multiple settled principles of judicial review." (*Hardin, supra*, 15 Cal. 5th at p. 862.) Muradyan's request for the court to find that the Legislature acted irrationally on the basis of a single law review article critiquing sex offender registries falls far short of the standard

---

[3] Ellman, *When Animus Matters and Sex Crime Underreporting Does Not: The Problematic Sex Offender Registry* (2021) 7 U. of Pa. J. of Law & Public Affairs 1. (https://repository.law.upenn.edu/Documents/Detail/when-animus-matters-and-sex-crime-underreporting-does-not-the-problematic-sex-offender-registry/96426?item=132938 [as of July 14, 2026], archived at <https://perma.cc/2EMD-EZZV>.)

13

required to find that a law violates equal protection under rational basis review, and we decline to grant this request. Costs on appeal are awarded to respondent.

**DISPOSITION**

The order is affirmed.
**CERTIFIED FOR PUBLICATION**


OCHOA, J.*


We concur:


EGERTON, Acting P. J.


HANASONO, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14